**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| RICHARD PACK, | ) |
| | ) |
| Plaintiff, | ) |
| | )    Case No. 4:24-cv-01120-JAR |
| vs. | ) |
| | ) |
| OFFICER KEVIN JACKSON, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM & ORDER</u>**

This matter is before the Court on the cross motions for summary judgment filed by

Plaintiff Richard Pack and Defendant Kevin Jackson.  For the reasons stated herein, Defendant's

motion will be granted, and Plaintiff's motion will be denied.

**I.      BACKGROUND**

This action arises from a traffic stop that occurred on May 23, 2024 during which

Defendant Kevin Jackson, a police officer for the City of Saint Ann, cited Plaintiff for violating

Missouri law, arrested him, and searched him.  On that date, Defendant observed Plaintiff riding

his bicycle down a public road when Plaintiff proceeded through two red traffic lights.  After

pulling Plaintiff over to the side of the road to initiate a traffic stop, an exchange occurred

between Plaintiff and Defendant Jackson during which Plaintiff acknowledges that he would not

answer questions or identify himself.  Defendant Jackson placed Plaintiff under arrest and

searched his possessions.  Plaintiff claims that Defendant Jackson deprived him of his Fourth

Amendment right to be free from unreasonable searches and seizures in violation of 42 U.S.C. §

1983 by stopping him and arresting him without probable cause and unlawfully searching his

possessions.  For the reasons herein, the Court disagrees and finds that Defendant Jackson is

entitled to qualified immunity precluding these claims.

1

Following the events of May 23, 2024, Plaintiff filed a petition in Missouri state court on July 8, 2024.  His petition stated claims against Defendant Jackson as well as the Saint Ann Police Department.  He alleged that Defendant Jackson and the Saint Ann Police Department deprived him of rights secured by the U.S. Constitution and the Missouri Constitution and stated additional tort claims including false imprisonment, assault, and battery.  (*See* ECF No. 3).  Both defendants removed the action to this Court on August 14, 2024 and moved to dismiss the complaint.  (*See* ECF Nos. 1, 5-6).  In lieu of dismissal, the Court permitted Plaintiff to file an amended complaint conforming to the federal pleading standards and more specifically addressing the elements of his claim under § 1983.  (ECF No. 12).  Plaintiff filed the operative amended complaint against Defendant Jackson and the City of Saint Ann on January 17, 2025, in which he purported to state claims under § 1983, 28 U.S.C. § 2201, and three constitutional amendments.  (ECF No. 22).  Since that time, the Court has dismissed the majority of Plaintiff's claims including all of his claims against the City of Saint Ann.  (ECF No. 31).  The only claim that remains is Plaintiff's claim that Defendant Jackson deprived Plaintiff of his Fourth Amendment right to be free from unreasonable search and seizure in violation of § 1983.

Both Plaintiff and Defendant Jackson have submitted motions for summary judgment. Defendant Jackson contends that he is entitled to qualified immunity precluding Plaintiff's claims.  Plaintiff retorts that qualified immunity does not apply here and that he is entitled to judgment as a matter of law on his Fourth Amendment claim because he has demonstrated that Defendant lacked probable cause to perform the traffic stop, arrest, and searches of his person and possessions.  The Court agrees with Defendant Jackson.  The record demonstrates that Defendant Jackson is entitled to qualified immunity and that Plaintiff's claim fails on the merits

because the undisputed facts—even construed in the light most favorable to Plaintiff—demonstrate no violation of Plaintiff's Fourth Amendment rights.

For purposes of summary judgment, the record reflects the following uncontroverted facts material to both the elements of Plaintiff's claim and Defendant Jackson's assertion of qualified immunity.[1]  In large part, this evidence is taken from the vehicle and body camera footage filed by Defendant Jackson in support of his motion for summary judgment, which provides an objective record of the interactions between Plaintiff and Defendant Jackson.[2]

On May 23, 2024, Plaintiff was riding his bicycle along St. Charles Rock Road in Saint Ann, Missouri.  At approximately 3:30 PM, Defendant Jackson was driving behind Plaintiff in his patrol car when he observed Plaintiff approach an intersection and proceed through it despite a steady red traffic light.  Defendant Jackson activated the lights on his patrol car to initiate a traffic stop.  Plaintiff did not immediately stop and instead proceeded through another intersection through another steady red light.  As Defendant Jackson pulled his patrol car

---

[1] Defendant Jackson argues that each of his factual allegations should be adopted as true pursuant to Local Rule 4.01(E), which allows the Court to presume all facts admitted if an opposing party does not specifically controvert them in a separately filed "Response to Statement of Material Facts" containing citation to the record where available.  While true that Plaintiff did not separately file a response to Defendant's statement of facts, he did offer a set of numbered responses to Defendant Jackson's allegations within his opposition brief.  In these responses, Plaintiff largely cites no evidence that actually contradicts each fact and appears to agree with the majority of the material facts while offering certain qualifications and commentary.  The Court herein recites the facts each party has identified and adequately supported with citation to the record, where appropriate, and which the opposing party either does not dispute or fails to properly controvert.

[2] Plaintiff offers no evidence or argument suggesting that the video evidence Defendant Jackson submitted does not accurately depict the interactions between him and Defendant Jackson.  He argues only that the video evidence Defendant Jackson cites was not properly disclosed during discovery.  This argument has been considered and rejected separately (*see* ECF Nos. 50, 62, 68).

alongside Plaintiff, Plaintiff rode his bicycle onto a sidewalk and stopped.  Defendant Jackson then stopped his vehicle, exited, approached Plaintiff, and began speaking with him.  Defendant Jackson explained the reason for the traffic stop (violation of a red-light signal) and asked Plaintiff for his identification.  Plaintiff and Defendant Jackson argued briefly regarding whether Plaintiff was considered "traffic" (and thus subject to traffic laws while riding his bicycle).  Plaintiff acknowledges that after this brief initial exchange, he refused to provide his identification and informed Defendant Jackson that he would not answer any questions.[3]  Defendant Jackson asked for Plaintiff's identity repeatedly.  Plaintiff continued to refuse to identify himself.  Defendant Jackson then informed Plaintiff that he was under arrest, handcuffed Plaintiff, and searched Plaintiff's person and backpack.  During the search, Defendant Jackson seized a firearm that was tucked into Plaintiff's waistband and searched Plaintiff's cross-body backpack that Plaintiff was wearing.  Defendant Jackson located Plaintiff's expired Missouri non-driver identification card in Plaintiff's wallet, which confirmed his identity and a prior address.  Defendant Jackson then transported Plaintiff in his patrol car to the Saint Ann Police Department, which was directly across the street.  Defendant Jackson issued Plaintiff a traffic citation for proceeding through a steady red-light signal.[4]

---

[3] In his opposition to Defendant Jackson's motion for summary judgment, Plaintiff seems to offer a new stance on this fact, arguing that he "never refused to produce identification" but merely "expressed an inability to answer any questions…" (ECF No. 63 at p. 4).  On review of the body camera footage (ECF No. 57-3), no reasonable jury could conclude that this is correct.  In response to Defendant Jackson's request for Plaintiff's identification, Plaintiff responded "I don't have an ID" (*see* ECF No. 57-3 at 00:22-30), despite Defendant Jackson locating Plaintiff's expired ID moments later during the search incident to arrest.  In response to several more attempts to obtain Plaintiff's identity to issue the traffic citation, Plaintiff repeatedly maintained that he "can't answer any questions" (*see id*. at 00:30-1:59).

[4] Plaintiff accuses Defendant Jackson of changing his story by alleging for the first time at summary judgment that Plaintiff ran not one, but two, red light signals.  (ECF No. 63 at p. 1).  However, the record reflects no such inconsistency, and Defendant's vehicle camera footage

Plaintiff challenges the lawfulness of the traffic stop, arrest, and searches Defendant Jackson performed.[5]  Plaintiff contends that Defendant Jackson lacked probable cause to initiate a traffic stop or arrest him after he refused to identify himself.  As such, Plaintiff argues, he is entitled to judgment as a matter of law on his claim that Defendant Jackson violated his Fourth Amendment rights.  Defendant Jackson argues that Plaintiff's Fourth Amendment claim is barred by qualified immunity because he had probable cause to initiate a lawful traffic stop after observing Plaintiff violate the law, and he had probable cause to arrest Plaintiff and search his person and possessions following Plaintiff's refusal to identify himself during the traffic stop.  Because the record is devoid of any constitutional violation, Defendant Jackson is entitled to qualified immunity shielding him from Plaintiff's claim, and Plaintiff's § 1983 claim substantively lacks merit.

## II.      DISCUSSION

"The usual Rule 56 standard of review applies to cross-motions for summary judgment." *Int'l Brotherhood of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).  As such, summary judgment may be awarded if there is no genuine dispute of

---

makes clear that Plaintiff rode his bicycle through two consecutive red lights.  Regardless, Defendant Jackson's actions were justified by observation of even one red-light violation.

[5] Plaintiff also takes issue with additional post-arrest actions he believes were unlawful (e.g., photographing and fingerprinting, and use of his "seized papers" to "obtain incorrect information about [Plaintiff]" (his previous address), all of which occurred later at the Saint Ann Police Department.  Plaintiff clarifies in his opposition that Defendant Jackson should be held accountable for these actions taken by other officers because the "Police Department would not have been able to commit these violations…had [Defendant Jackson] not made his unlawful arrest and unlawful search."  (ECF No. 63 at p. 7).  Plaintiff fails to point to any authority suggesting that an official may be held accountable for the actions of others allegedly occasioned by that official's intervention.  Moreover, it is well established that "routine administrative steps incident to arrest," which include "booking, photographing, and fingerprinting" to ascertain the arrestee's identity, do not run afoul of the Fourth Amendment.  *Maryland v. King*, 569 U.S. 435, 461 (2013) (internal quotations omitted).

material fact, and the movant has shown that they are entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  In determining whether either side has met this burden, "the relevant

inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Bingaman v.*

*Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

To determine which facts are material, the Court looks to the substantive law at issue to

determine which facts are critical to the outcome.  *Com. Union Ins. v. Schmidt*, 967 F.2d 270,

272 (8th Cir. 1992).  A genuine issue of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  On

summary judgment, evidence is construed in the light most favorable to the nonmoving party,

and the Court draws all reasonable inferences in that party's favor when evaluating each claimed

ground for summary judgment.  *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802-03

(8th Cir. 2014).

Demonstration of a constitutional violation is essential to both defeating qualified

immunity and sustaining a cause of action under § 1983.  First, the doctrine of qualified

immunity shields government officials from civil liability so long as they did not knowingly

violate a clearly established constitutional or statutory right.  *See Hernandez v. Mesa*, 582 U.S.

548, 554 (2017).  This doctrine is comprised of two prongs: (1) violation of a constitutional or

statutory right, and (2) clear establishment of the right at the time of the violation "such that a

reasonable official would have known that his actions were unlawful."  *Blazek v. Iowa City*, 761

F.3d 920, 922-23 (8th Cir. 2014).  A case may be resolved under either prong of the analysis; if

the plaintiff fails to demonstrate violation of a constitutional or statutory right, qualified

immunity cannot be defeated. *Blazek*, 761 F.3d at 923; *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) ("Because an official is entitled to qualified immunity unless both prongs are satisfied, our analysis will end if either of the two is not met."). Qualified immunity is a formidable barrier to suit against an official. "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks omitted).

Section 1983 likewise incorporates the required element of a constitutional violation. To state a claim under § 1983, a plaintiff must prove: "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001). Plaintiff fails to demonstrate any violation of his rights because the traffic stop and arrest were supported by probable cause, and the searches took place incident to a lawful arrest.

**A. The traffic stop was supported by probable cause.**

First, the traffic stop was reasonable and supported by probable cause. "A traffic stop constitutes a seizure under the Fourth Amendment." *U.S. v. $45,000.00 in U.S. Currency*, 749 F.3d 709, 715 (8th Cir. 2014) (internal quotation marks omitted). A traffic stop is reasonable and does not violate the Fourth Amendment if an officer has "probable cause to believe that a traffic violation has occurred." *Id.*; *see also U.S. v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008) (explaining that a law enforcement officer "who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment"); *U.S. v. Harris*, 617 F.3d 977, 979 (8th Cir. 2010) ("Even a minor traffic violation provides probable cause for a traffic stop."). Whether probable cause existed is "an objective question of law." *Bowden v. Meinberg*, 807 F.3d 877, 881 (8th Cir. 2015). Because Defendant Jackson observed

7

Plaintiff proceed through two red lights on his bicycle, which violates Missouri law, he had probable cause to initiate a traffic stop.

The gravamen of Plaintiff's argument, both in support of his motion and in opposition to Defendant's motion, is his contention that he was not subject to traffic laws while riding his bicycle down a public road. He contends that no evidence or authority has been presented establishing that he was subject to Missouri's red-light law, so Defendant Jackson could not have possessed probable cause to believe a violation of law had occurred sufficient to initiate a traffic stop, arrest, or search incident to that arrest. Plaintiff is incorrect.

As Defendant Jackson explained to Plaintiff during the traffic stop, Plaintiff was obligated to follow the same red-light law the drivers of vehicles must follow when riding his bicycle down a public road. According to Missouri law, "[e]very person **riding a bicycle**, electric bicycle, or motorized bicycle upon a street or highway shall be granted all of the rights and shall be **subject to all of the duties applicable to the driver of a vehicle** as provided by chapter 304…." Mo. Rev. Stat. § 307.188. In turn, Chapter 304 of the Missouri code prescribes general traffic laws including the obligation to stop at a red light. *See* Mo. Rev. Stat. § 304.281(3)(a) (describing the requirement to stop and refrain from entering a crosswalk or intersection at a steady red light); *see also* § 304.285 (contemplating "red light violations by motorcycles or **bicycles**" and describing an affirmative defense not applicable here for "any person operating a motorcycle or **bicycle** who violates the provisions of section 304.281 or section 304.301 by entering or crossing an intersection controlled by a traffic control signal against a red light…" (emphasis added)). Contrary to Plaintiff's arguments, one does not need to *be* the driver of a vehicle to be subject to the same duties and obligations as the driver of a vehicle, i.e., to follow traffic laws while proceeding down a public road. Having witnessed

8

Plaintiff proceed through two red lights on his bicycle, Defendant Jackson had sufficient probable cause to initiate a traffic stop of Plaintiff.

Plaintiff's citation to the memorandum of *nolle prosequi* he contends the prosecutor entered in the municipal case is unpersuasive.[6]  Plaintiff argues that "the dismissal of the municipal case alleging the red-light violation by nolle prosequi is adequate evidence of a lack of probable cause for the traffic stop…."  (ECF No. 60 at p. 1).  Far from it.  A dismissal by *nolle prosequi* does nothing to vitiate the probable cause that justified the traffic stop.  A *nolle prosequi* has no bearing on whether the underlying charge was meritorious.  *See Ciesla v. Christian*, No. 1:14-cv-00165-ACL, 2015 U.S. Dist. LEXIS 21563, *4 (E.D. Mo. Feb. 24, 2015) (internal quotation marks omitted) (entry of *nolle prosequi* "in and of itself is not a termination in favor of the defendant"); *State v. Buchli*, 152 S.W.3d 289, 307 (Mo. App. W.D. 2004) (*nolle prosequi* results in dismissal *without* prejudice); *see also Bucolo v. Adkins*, 424 U.S. 641, 642 (1976) (*nolle prosequi* "neither operates as an acquittal nor prevents further prosecution of the offense").[7]  The prosecutor's decision to refrain from pursuing the traffic violation later does nothing to undercut the original traffic violation justifying the stop.

Plaintiff also offers a series of accompanying arguments that make little sense to attempt to evade culpability for the red-light violation and defeat qualified immunity.  Plaintiff's arguments referencing a lack of "commercial activity" or contractual obligation, a constitutional

---

[6] Defendant Jackson does not dispute that a *nolle prosequi* was entered in relation to this charge.

[7] Plaintiff alleges that the prosecutor entered the memorandum of *nolle prosequi* "mid trial" after Plaintiff asked whether any evidence that he ran the red light would be presented, and none was produced.  (ECF No. 60 at p. 3).  However, Plaintiff failed to cite any evidence or materials supporting any of these contentions.  *See* Fed. R. Civ. P. 56(c)(1).  Further, Plaintiff has pointed to no authority that suggests that entering a *nolle prosequi* during a trial creates any inference as to the validity of the charge.

right to travel, and the Clearfield Doctrine are largely characteristic of the "sovereign citizen" movement challenging the reach of state and federal law based on theories wholly irrelevant here; thus, they are rejected.  *See generally United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (claims based on sovereign citizen ideology are "completely without merit, patently frivolous," and subject to dismissal); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) ("sovereign citizen" arguments have "no conceivable validity in American law"); *see also generally Pack v. City of St. Charles*, No. 4:25-cv-0911-MTS, 2025 U.S. Dist. LEXIS 201132, at *2 (E.D. Mo. Oct. 10, 2025) (in which this Court rejected another of Plaintiff's baseless and unmeritorious legal assertions that "seems to sound in the make-believe notions popular among so-called 'sovereign citizens,'" which are not given credence in this Court).

Plaintiff emphasizes in his opposition to Defendant Jackson's motion that his bicycle does not fit the definition of the word "traffic."  He argues that the definition of "traffic" makes clear that one must be engaged in commercial activity.  First, Missouri law defines "traffic" as "pedestrians, ridden or herded animals, vehicles, streetcars and **other conveyances** either singly or together while using any highway for purposes of travel."  Mo. Rev. Stat. § 300.010(39) (emphasis added).  A bicyclist proceeding down a public road is clearly captured therein. Plaintiff's semantic argument is also immediately undercut in his own briefing by the very definition of "traffic" he provides, which includes "[t]he subjects of transportation on a route, as persons or goods" and "the passing to and fro of persons…along a route of transportation, as along a street, highway, etc."  (ECF No. 63 at p. 2).  Plaintiff attempts to draw attention to a different section of his definition of "traffic" which refers to "commerce; trade; sale or exchange of merchandise, bills, money, and the like."  *Id*.  Because Plaintiff was not conducting any form of "commerce," he reasons, he was not subject to laws applicable to "traffic."  *Id*.  This argument

10

is frivolous and is rejected. *See, e.g., Davis v. Goodwin*, No. 4:24-CV-161-M, 2025 U.S. Dist. LEXIS 83572, at \*3-5 (E.D.N.C. Feb. 27, 2025), *report & recommendation adopted*, No. 4:24-CV-00161-M-RJ, 2025 U.S. Dist. LEXIS 220604 (finding that the plaintiff's argument that traffic laws were improperly applied to him because he failed to conduct any "commercial activity" on public roadways was "rambling and delusional, and as such…must be dismissed as frivolous"). There is absolutely no requirement that one be engaged in "commerce" to be subject to state law governing the safety of public roads.

Traffic law is not a function of contractual obligation either. Requiring Plaintiff to follow traffic laws does not compel him to undertake "specific performance" of a contractual obligation as he contends. (ECF No. 60 at p. 2). Plaintiff attempts to point to his lack of a license plate, unexpired identification card, or "commercial" driver's license—all of which he suggests are contracts, the terms of which would have obligated him to follow Missouri traffic law. These contentions are simply without merit. The traffic law at issue applies to every cyclist and driver who chooses to proceed on public roads. Mo. Rev. Stat. § 307.188.

**B. The subsequent arrest was also lawful.**

The next argument Plaintiff raises is that Defendant Jackson lacked probable cause to arrest Plaintiff. "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). However, a § 1983 claim based on an allegedly unlawful arrest fails as a matter of law if the arresting officer had probable cause. *See id.*; *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). Probable cause exists where the facts and circumstances within a law enforcement officer's knowledge would be sufficient to lead a person of reasonable caution to believe that an individual has committed or is committing an

11

offense.  *Galarnyk v. Fraser*, 687 F.3d 1070, 1074 (8th Cir. 2012); *see also Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) (internal quotation marks omitted) ("An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.").

As this Court has previously explained to Plaintiff,[8] police officers possess authority to arrest an individual for committing a violation of traffic law.  *Wood v. Wooten*, 986 F.3d 1079, 1081 (8th Cir. 2021) (finding that § 1983 claim was not meritorious given that even a minor traffic violation justified arrest); *see also United States v. Burtton*, 599 F.3d 823, 829 (8th Cir. 2010) (internal quotation marks omitted) (noting the "well-established principle of the common law that a police officer is permitted to arrest without a warrant if a misdemeanor is committed in the officer's presence.") *and* Mo. Rev. Stat. § 304.281 (failure to stop at a steady red light is a class C misdemeanor).  Here, there is no question that Plaintiff committed a traffic offense by violating the state red-light statute.  When Plaintiff further refused to identify himself, Defendant Jackson exercised his discretion to arrest Plaintiff to complete the citation Plaintiff was later given.

Defendant Jackson argues that Plaintiff's arrest was also justified by Plaintiff's refusal to identify himself in violation of Mo. Rev. Stat. § 300.080 and § 576.030.  Section 300.080 mandates that "[n]o person shall knowingly fail or refuse to comply with any lawful order or direction of a police officer or fire department official."  Section 576.030 prohibits obstruction of

---

[8] *See Pack v. City of Saint Ann*, No. 4:24-cv1658-CDP, 2025 U.S. Dist. LEXIS 91808, at *19-20 (E.D. Mo. May 14, 2025) (dismissing Plaintiff's § 1983 claim alleging an unlawful arrest in violation of the Fourth Amendment because Plaintiff's actions of speeding and failing to use a turn signal would create probable cause to arrest Plaintiff).

government operations "by the use or threat of violence, force, or other physical interference or obstacle." The Court is not convinced that § 576.030 was implicated here given that Plaintiff exhibited no physical force, and the Eighth Circuit has suggested that while an officer is entitled to order an individual to identify himself, a refusal is not enough *without more* to support a lawful arrest under § 300.080. *See Murphy v. Schmitt*, 143 F.4th 914, 919-20 (8th Cir. 2025); *Fla. v. Bostick*, 501 U.S. 429, 437 (1991) ("a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure"). Plaintiff also emphasizes that he is not required to identify himself or carry an ID and that he was exercising his right to remain silent.[9] Here, however, the arrest was not justified only by Plaintiff's failure to identify himself. Plaintiff was observed violating Missouri traffic law by proceeding on his bicycle through two red lights and *then* refused to identify himself to Defendant Jackson to allow Defendant Jackson to issue a justified traffic citation. The underlying traffic violation was enough to support an arrest as a matter of law. Further, even assuming Defendant Jackson was motivated only by Plaintiff's refusal to answer questions, "subjective motivation does not carry the day" if independent, and even arguable, probable cause existed. *Ward*, 173 F.4th at 1000. The Court finds ample probable cause for the arrest existed here.

---

[9] In support of this argument, Plaintiff cites the Fifth Amendment and insists that he could not be "punished" for invoking his right to remain silent. (ECF No. 63 at p. 9). To the extent Plaintiff attempts to raise a Fifth Amendment retaliation claim for the first time at the summary judgment stage, it is easily dispensed with. The totality of the circumstances indicates that when Plaintiff refused to answer Defendant Jackson's requests for his identity, he was not in custody, and therefore, his relevant Fifth Amendment rights were not implicated. *See Alexander v. City of Round Rock*, 854 F.3d 298, 307 (5th Cir. 2017) (Fifth Amendment retaliation claim rejected because "[a]n individual's Fifth Amendment right against self-incrimination is implicated only during a custodial interrogation"). Further, the existence of even arguable probable cause to arrest an individual for an observed violation of the law (here, the red-light violation) defeats a § 1983 claim that the arrest was retaliatory. *See Ward v. City of Sherwood*, 173 F.4th 994, 1000 (8th Cir. 2026) (no retaliatory arrest claim could be sustained where there was objective evidence of arguable probable cause that plaintiff engaged in unlawful conduct).

13

**C. Defendant Jackson's searches were also lawful.**

Defendant Jackson's searches incident to this lawful arrest were therefore also reasonable and lawful. Generally, searches conducted without a warrant are "*per se* unreasonable under the Fourth Amendment," but there are well established exceptions to this principle that include a search performed incident to a lawful arrest. *United States v. Goodwin-Bey*, 584 F.3d 1117, 1119 (8th Cir. 2009) (internal quotation marks and citation omitted). An officer is permitted to search an individual without a warrant when they have just been lawfully arrested. *See United States v. Pratt*, 355 F.3d 1119, 1121 (8th Cir. 2004) ("[I]f an officer has arrested the individual, the officer may search the individual's person incident to that arrest and may reach into his pockets."). The officer may also reasonably search "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Goodwin-Bey*, 584 F.3d at 1119 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). This authorization extends to a search of a closed bag that was in the arrestee's possession. *United States v. Perdoma*, 621 F.3d 745, 750 (8th Cir. 2010). Thus, Defendant Jackson reasonably and lawfully searched Plaintiff's person, waistband, backpack, and wallet upon arresting him. Because no constitutional violation arises here either, Plaintiff's § 1983 claim for violation of his Fourth Amendment rights completely lacks merit, and Defendant Jackson's qualified immunity remains undisturbed.

## III.   CONCLUSION

The Court concludes that the evidence in the record does not give rise to any genuine factual dispute as to whether Defendant Jackson is entitled to qualified immunity and whether Plaintiff can prove the elements of his § 1983 claim for the deprivation of Fourth Amendment rights. For the reasons stated herein, the Court finds that Defendant Jackson is entitled to

14

qualified immunity precluding Plaintiff's § 1983 claim, which independently fails on the merits as well.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kevin Jackson's motion for summary judgment [ECF No. 55] is **GRANTED**, and Plaintiff Richard Pack's motion for summary judgment [ECF No. 60] is **DENIED**.

**IT IS FURTHER ORDERED** that all deadlines, including the trial setting and pretrial conference in this case, are **VACATED**.  A separate judgment will accompany this memorandum & order.

Dated this 6th Day of July, 2026.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE